UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| EASTGATE INVESTMENTS I, LLC,<br>    Plaintiff, | )<br>)<br>) |
| v. | )   CAUSE NO.: 2:19-CV-304-JTM-JPK |
| MW BUILDERS, INC.,<br>    Defendant. | )<br>)<br>)<br>) |
| MW BUILDERS, INC.,<br>    Third-Party Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| MUD SLINGERS INC.; JOHN A. DILLE<br>& SONS CONSTRUCTION CO., INC.;<br>CALUMET MASONRY CO.; and<br>CHARLES GLUTH AND SON<br>ROOFERS, INC.,<br>    Third-Party Defendants. | )<br>)<br>)<br>)<br>)<br>) |

**OPINION AND ORDER**

This matter is before the Court on the "Verified Motion To File An Amended Answer" [DE 137], filed by Third-Party Defendant Charles Gluth and Son Roofers, Inc. ("Gluth"). For the following reasons, the motion is granted.

**BACKGROUND[1]**

In 2009, the parties to this lawsuit were involved in the construction of Buildings 1 and 2 of the Uptown East Apartments in Valparaiso, Indiana ("the Project"). The buildings' owner, Plaintiff Eastgate Investments I, LLC ("Eastgate"), hired Defendant/Third-Party Plaintiff MW Builders, Inc. ("MW Builders"), to serve as general contractor for the construction project. MW Builders, in turn, hired Gluth to serve as the roofing and downspouts subcontractor. In the

---

[1] The facts in this section are undisputed, unless otherwise designated.

subcontract between Gluth and MW Builders, Gluth agreed to (among other things) indemnify and defend MW Builders from and against all claims, causes of action, and expenses alleged to have been caused in whole or in part by any act or omission of Gluth. *See* [DE 53-4 at 4].

On August 16, 2019, Eastgate sued MW Builders for defects in the "exterior wall assembly" of the buildings. [DE 1 ¶ 10]. On March 16, 2020, MW Builders filed a Third-Party Complaint against two other subcontractors, but not Gluth. [DE 28]. On April 1, 2020, MW Builders filed an Amended Third-Party Complaint against the two previously named subcontractors, but, again, not Gluth. [DE 26]. On July 7, 2020, Eastgate filed an Amended Complaint against MW Builders in which it alleged for the first time the existence of defects in the roofing of the buildings. [DE 46]. On August 25, 2020, MW Builders filed its Second Amended Third-Party Complaint adding Gluth as a Third-Party Defendant. [DE 53]. MW Builders alleged breach of contract against Gluth to the extent that Eastgate's averments in the Amended Complaint regarding defects in the roofing of the buildings were proven to be true, and also demanded indemnification from Gluth. [*Id*.].

MW Builders did not serve Gluth with the Second Amended Third-Party Complaint until on or about March 6, 2021. [DE 75]. Gluth filed its Answer to MW Builder's Second Amended Third-Party Complaint on April 29, 2021. [DE 96]. On May 24, 2021, the Court entered a Scheduling Order which provided, among other things, that the last date for Third-Party Defendants, including Gluth, to seek leave of court to join additional parties and to amend pleadings was August 31, 2021. [DE 98]. The Scheduling Order also provided that expert disclosures were to be made by November 20, 2021 for Eastgate, January 10, 2022 for MW Builders, and February 11, 2022 for Third-Party Defendants, and that all discovery was to be completed by April 29, 2022. [*Id.*].

2

On July 13, 2021, Gluth moved for judgment on the pleadings on MW Builder's claims. The basis for the motion was that MW Builders' claims against Gluth were barred by Indiana's ten-year statute of repose on construction claims. [DE 101]. The motion was opposed by MW Builders. [DE 105].

On November 15, 2021, the parties filed a joint motion to amend the Scheduling Order deadlines, stating in support of the requested extension that: (1) given the volume of documents to be reviewed and the schedule of counsel, the parties were not previously in a position to begin depositions, and therefore additional time for expert disclosures and the completion of all discovery was needed; (2) additional time was needed to allow for mediation to occur; and (3) additional time was needed because Gluth's motion for judgment on the pleadings as well as a summary judgment motion filed by another Third-Party Defendant were then pending before the District Court. [DE 118]. In response to the joint motion, on November 16, 2021, the Court extended the expert disclosure deadlines to February 28, 2022 for Eastgate, April 11, 2022 for MW Builders, and May 11, 2022 for Third-Party Defendants. [DE 119]. The deadline for all discovery to be completed was extended to July 29, 2022. [*Id.*].

On March 28, 2022, the District Court denied Gluth's motion for judgment on the pleadings. [DE 134]. On April 8, 2022, MW Builders filed a motion to amend the Scheduling Order, stating that: (1) fact discovery between Eastgate and MW Builders was largely completed and that Eastgate had completed the deposition of MW Builders' representative in November 2021; (2) no depositions of representatives of any Third-Party Defendant had yet taken place and it was unclear whether Eastgate intended to proceed with those depositions due in part to the unavailability of company representatives for the Third-Party Defendants as a result of the passage of time since the construction project at issue; (3) the District Court's recent rulings denying

3

Gluth's motion for judgment on the pleadings and another Third-Party Defendant's motion for summary judgment meant that the case would go forward at least as to those Third-Party Defendants; and (4) Eastgate submitted expert disclosures indicating that repair work on the buildings was planned and/or in progress and MW Builders needed further information concerning that repair work. [DE 135]. MW Builders requested additional time to provide its expert disclosures due to the scope of information included with Eastgate's expert disclosures, and MW Builders' asserted need to conduct site visits following those disclosures but prior to making its own expert disclosures. [*Id.*]. In response to MW Builders' motion and without objection by any party, the Court extended the expert disclosure deadlines to May 26, 2022 for MW Builders, and June 27, 2022 for Third-Party Defendants, and it extended the deadline for all discovery to September 12, 2022. [DE 136].

On June 6, 2022, Gluth filed the present motion seeking leave to file an Amended Answer to MW Builders' Second Amended Third-Party Complaint. Gluth attached its Proposed Amended Answer to its motion. [DE 137-1]. The Proposed Amended Answer seeks to name Pollack Architectural Group, P.C. ("Pollack") as a nonparty responsible for any building defects attributed to Gluth by MW Builders. [DE 137 ¶ 8]. Prior to filing the present motion, Gluth circulated the Proposed Amended Answer to all parties of record; the only party to object to Gluth's filing of the Proposed Amended Answer was Eastgate. [*Id.* ¶¶ 11-12]. Eastgate filed a written objection to Gluth's motion on June 15, 2022. [DE 139]. Gluth filed a reply in support of its motion [DE 140], and the motion, being fully briefed, is ripe for ruling.

## DISCUSSION

As an initial matter, the parties[2] dispute the appropriate standard for evaluating Gluth's motion. Gluth argues that Rule 15 of the Federal Rules of Civil Procedure, which governs when and how a party may move to file an amended pleading, applies. [DE 140 at 2-3, 4]. Under Rule 15, the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Eastgate, on the other hand, argues that the applicable standard is found in Rule 16 of the Federal Rules of Civil Procedure. [DE 139 at 2]. Rule 16 requires a district court to issue a scheduling order as soon as practicable, and the order is required to include a deadline for filing amended pleadings. *See* Fed. R. Civ. P. 16(b)(2), (b)(3)(A). The Rule further states that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see Trustmark Ins. Co v. Gen. Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) ("To amend a pleading after the expiration of the trial court's Scheduling Order deadline to amend pleadings, the party must show 'good cause.'").

The answer to the parties' dispute is that both Rule 16 and Rule 15 must be satisfied. That is, the Court applies a two-step analysis in evaluating a motion for leave to amend a pleading after the expiration of the scheduling order deadline to amend pleadings. First, the Court asks whether the moving party has shown "good cause." *Trustmark Ins. Co.,* 424 F.3d at 553 (quoting Fed. R. Civ. P. 16(b)(4)). If the good cause standard is met, the Court then applies the Rule 15(a)(2) standard for amendments of allowing leave to amend "freely … when justice so requires," Fed. R. Civ. P. 15(a)(2). *See Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011) (stating that "[t]he

---

[2] "The parties" refers to the movant, Gluth, and the only party who has opposed Gluth's motion, Eastgate.

two-step process is consistent with nearly every one of our sister circuits (and out of step with none)").[3]

### A. GOOD CAUSE

"Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking amendment.'" *Trustmark Ins. Co.,* 424 F.3d at 553 (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)); *see also Alioto,* 651 F.3d at 720 ("In making a Rule 16(b) good–cause determination, the primary consideration for district courts is the diligence of the party seeking amendment."). Here, a scheduling order was entered on July 8, 2021 establishing an August 31, 2021 deadline for Gluth to amend its answer to the Second Amended Third-Party Complaint. Thus, Gluth's motion on June 6, 2022 for leave to file the Proposed Amended Answer was filed more than nine months after the amendment deadline had expired.

Gluth explains that it waited until June 6, 2022 to seek to amend its answer because the amendment is based on information Gluth learned from MW Builders' expert disclosure and accompanying exhibits, which were served on May 26, 2022. Specifically, Gluth states, MW Builders' expert report states that the damages incurred by MW Builders because of defective work performed by Gluth were the result of the "*design* of the roof assembly," which "failed to provide an effective vapor barrier" and "failed to call for insulated drainpipes or specify that insulation must be installed below the drainpipes." [DE 137 ¶ 3 (emphasis added by Gluth)]. In

---

[3] *See, e.g., GJMS, LLC v. Hamstra Builders, Inc.*, No. 2:18-CV-135-JTM-JEM, 2021 WL 4932857, at *1 (N.D. Ind. Oct. 21, 2021) ("When a party moves to amend its complaint after the amendment deadline set in a Rule 16 order, the Court first considers whether to extend the deadline under the heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) were satisfied." (internal quotation marks and citation omitted)); *Tschantz v. McCann*, 160 F.R.D. 568, 571 (N.D. Ind. 1995) ("[A] party seeking to amend a pleading after the date specified in a scheduling order must first show 'good cause' for the amendment under Rule 16(b), then, if good cause be shown, the party must demonstrate that the amendment was proper under Rule 15.").

relation to this asserted design defect, Gluth cites to the subcontract between it and MW Builders, which obligated Gluth

> to perform all the work for the construction and completion of … [the Project] in accordance with the contract and all other documents and other matters made part of said contract, including the plans, specifications, and conditions for said Project prepared by Pollack Architectural Group, P.C., herein called "Architect," together with modifications thereof and addenda thereto, and any other document binding upon MW [Builders], herein, collectively called the "Prime Contract," all of which are incorporated by reference and expressly made apart hereof.

[*Id.* ¶ 4 (quoting DE 53-4 at 1)]. The "Plans and Specifications" incorporated in the MW Builders/Gluth subcontract included the "Roof Plan and Details," as well as the "Roof Framing Plan" for the subject buildings, prepared by Pollack. [*Id.* ¶ 7 (citing DE 53-4 at 17)]. In response to this new information, Gluth seeks to amend its answer by adding the following paragraph to its Affirmative Defenses:

> 17. The damages claimed by Third-Party Plaintiff [MW Builders] and Eastgate Investments I, LLC, were caused, in whole or in part, by non-party Pollack Architectural Group, P.C., an entity with a business address, upon information and belief, of 6 N. Morgan Blvd., Ste. 200, Valparaiso, IN 46383.

[DE 137-1 at 25].

Eastgate argues that Gluth has not shown good cause for waiting until after receiving MW Builders' expert disclosure to assert that Eastgate's damages, for which MW Builders seeks to hold Gluth liable, were caused in whole or in part by Pollack. Specifically, Eastgate points out that MW Builders' Second Amended Third-Party Complaint attached a copy of the subcontract between Gluth and MW Builders as an exhibit, and the subcontract includes an attachment (Exhibit C) that lists the project specifications and drawings, including the architectural and engineering drawings while also identifying Pollack as the preparer of the same. [DE 139 ¶¶ 5, 7]. Eastgate further points out that, on April 14, 2021, Gluth received Eastgate's Rule 16(a)(1) Disclosures,

and six days later, received Eastgate's discovery responses, which included the production of over 10,000 documents, including the architectural and engineering drawings prepared by Pollack. [*Id.* ¶¶ 8-9].

As an initial matter, the Court rejects Eastgate's suggestion (*see* [*id.* ¶ 11]) that, in the four months between April 29, 2021 (when Gluth filed its answer to MW Builders' Second Amended Third-Party Complaint) and August 31, 2021 (the Scheduling Order's deadline for the Third-Party Defendants to amend their pleadings), Gluth should have been able to determine that Eastgate's claimed damages against MW Builders for Gluth's work under the subcontract were caused by Pollack. Given the volume of Eastgate's document production, such a contention is unrealistic. It is further belied by the joint motion to amend the Scheduling Order deadlines filed on November 15, 2021, to which all parties agreed, and which stated that, because of the volume of documents that the parties needed to review, combined with the parties' counsels' schedules, witness depositions had not yet been conducted. [DE 118].

Eastgate also argues that if Gluth "needed more time to so evaluate prior to August 31, 2021 [whether the alleged damages were caused by Pollack], then Gluth could have and should have filed a motion to amend the scheduling order." [DE 139 ¶ 11]. But Eastgate does not cite any case law to support its view that Gluth's failure to move for an extension of the August 31, 2021 deadline prior to its expiration is a sufficient reason to deny Gluth's motion to amend. When a party moves for an extension of a deadline after the deadline has passed, the moving party must show that its failure to act within the original deadline was due to excusable neglect. *See* Fed. R. Civ. P. 6(b)(1). To determine whether the neglect in filing a request for extension after the deadline expired was excusable, the Court must make an equitable determination, "'taking account of all relevant circumstances, includ[ing] the danger of prejudice . . . the length of the delay . . . the

reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" *Simstad v. Scheub*, 816 F.3d 893 (7th Cir. 2016) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs., Ltd. P'ship*, 507 U.S. 380, 395 (1993)). While it arguably would have been more prudent for Gluth to have sought an extension of the amendment deadline to accommodate any future amendment it might want to make following discovery, Gluth would have had to incur the costs of bringing such an extension motion without knowing whether an extension would ultimately be necessary. In any event, the Seventh Circuit has said that "'good cause' imposes a more difficult standard than 'excusable neglect' because the former 'implies justification rather than excuse (negligence can be excused but not justified).'" *Bowman v. Korte*, 962 F.3d 995, 998 (7th Cir. 2020) (quoting *CFTC v. Lake Shore Asset Mgmt. Ltd.*, 646 F.3d 401, 404 (7th Cir. 2011)). Therefore, if Gluth has met the more difficult good cause standard, it would seem that it also has met the more lenient excusable neglect standard. *See id.*

Finally, Eastgate argues that Gluth did not act diligently in the time period between the August 31, 2021 amendments deadline and MW Builders' May 26, 2022 expert disclosure to affirmatively investigate Pollack's potential tort exposure arising out of its preparation of the architectural and engineering plans and specifications." [*Id.*]. Eastgate notes, for instance, that MW Builders' employee, Eric Bebermeyer, was deposed on November 18, 2021 and Gluth's counsel did not ask any questions of him during the deposition. [*Id.*]. But Eastgate does not explain why Gluth's counsel's failure to ask any questions of MW Builders' employee during the deposition amounted to a lack of diligence, and the Court is not under any obligation to attempt to supply the missing explanation. In any event, the Court agrees with Gluth that Eastgate, who has not asserted any claims against Gluth, does not have a direct interest in Gluth's motion to amend, and thus, at least arguably, does not have standing to oppose Gluth's motion. *Cf. Raab Family Ptn'ship v.*

9

*Borough of Magnolia,* Civil No. 08-5050 (JBS/AMD), 2009 WL 10689669, at *4 (D.N.J. Oct. 30, 2009) (stating that "[t]here is no 'authority that would ... authorize present parties who are unaffected by the proposed amendment to assert claims of futility" in opposing the motion to amend (quoting *Clark v. Hamilton Mtg. Co.,* No. 1:07-252, 2008 WL 919612, at *2 (W.D. Mich. Apr. 2, 2008)). The party who has asserted claims against Gluth and against whom Gluth's Proposed Amended Answer is directed is MW Builders, and MW Builders has not opposed Gluth's motion. As Gluth argues, "[b]ecause Eastgate has filed no claims against Gluth, Eastgate cannot articulate any prejudice against it that would result from granting Gluth leave to file an Amended Answer. In fact, Eastgate's Response in opposition to Gluth's motion fails to demonstrate any adverse impact permitting an Amended Answer would have upon Eastgate, let alone an unduly prejudicial impact." [DE 140 at 6].

In any event, Gluth cites several facts that support its argument that it has acted diligently in asserting its affirmative defense based on a nonparty's actions. First, Gluth asserts [DE 140 at 6-7] that "the date of substantial completion of the improvement" triggering Indiana's 10-year statute of repose[4] was August 19, 2009. *See* [DE 102 at 2 (citing DE 46, ¶ 8)]. Thus, on July 13, 2021, Gluth filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), in which it argued that Eastgate's claims against MW Builders related to the allegedly defective roofing—and thus derivatively MW Builders' contractual and indemnity claims against Gluth based on Eastgate's claims—were barred because Eastgate did not assert

---

[4] *See* Ind. Code § 32-30-1-5(d)(1) ("An action to recover damages, whether based upon contract, tort, nuisance, or another legal remedy, for: (1) a deficiency or an alleged deficiency in the design, planning, supervision, construction, or observation of construction of an improvement to real property …. may not be brought against a designer or possessor unless the action is commenced within the earlier of ten (10) years after the date of substantial completion of the improvement or twelve (12) years after the completion and submission of plans and specifications to the owner if the action is for a deficiency in the design of the improvement.").

those claims until July 7, 2020, almost a year after the 10-year statute of repose expired on August 19, 2019. *See* [DE 101, 102]. Gluth's Rule 12(c) motion was denied by the District Court in an opinion and order wherein the Court declined to decide whether the date of substantial completion was in fact August 19, 2009, but held that, even if it was, the statute of repose did not apply to MW Builders' claims against Gluth because those claims are not construction claims at all but rather contract claims that spring from the agreement between MW Builders and Gluth. *See* [DE 134 at 4-6 (citing *S. Dearborn Sch. Bldg. Corp. v. Duerstock*, 612 N.E.2d 203, 208-09 (Ind. Ct. App. 1993) (holding that an action between a contractor and a subcontractor for contractual indemnification was not subject to Indiana's statute of repose related to construction projects)]. The District Court's opinion and order, however, was not entered until March 28, 2022. Hence, between August 31, 2021 and March 28 2022, Gluth had a good faith basis for believing that the claims against it would be dismissed on the pleadings.

Moreover, even if it was unreasonable for Gluth to rely on its statute of repose defense as a bar to MW Builders' claims for indemnification for defects in the roofing, Gluth's failure to actively seek to identify Pollack as a responsible nonparty nonetheless may be somewhat justified by the 10-year statute of repose in another respect. On July 21, 2020, MW Builders filed its answer to Eastgate's Amended Complaint, which raised the statute of repose as an affirmative defense to Eastgate's claims. [DE 50 at 12 (¶ 2)]. The District Court held that the statute of repose did not apply to MW Builders' claims against Gluth, but it has not yet been determined whether the statute applies to bar Eastgate's claims against MW Builders. And if MW Builders is not liable to Eastgate for the allegedly defective roof, then MW Builders may not have sustained damages for which it could recover against Gluth.

Additionally, as Gluth further points out, Gluth "is a defunct entity." [DE 140 at 5 (citing DE 96 (Gluth's Answer to MW Builders' Second Amended Third-Party Complaint) ¶ 5 (admitting MW Builders' allegation that "Gluth is an administratively dissolved corporation organized under the laws of the State of Indiana with its principal place of business located in Gary, Indiana")]. In fact, on December 14, 2021, Gluth filed a memorandum in response to a motion to compel filed by Eastgate "advising all parties that despite reasonable efforts, Gluth has been unable to locate a representative to provide any information related to the subject of this litigation." [DE 140 at 5 (citing DE 125 at 1-2]. As such, Gluth argues, it "has relied upon the facts discovered and presented by the other parties to progress the defense of this matter," and "[t]o argue that Gluth should be aware of each and every detail of the subject project despite the lack of company representative is without support." [*Id.*].

Finally, the Court notes that in April 2022, MW Builders gave a number of reasons for why the deadline for it to serve its expert disclosures should be extended, including uncertainty regarding how to proceed with discovery against the Third-Party Defendants due to the unavailability of company representatives as a result of the passage of time, as well as new information learned from Eastgate regarding Eastgate's claims against MW Builders that required MW Builders to further investigate. [DE 135]. Eastgate did not oppose MW Builders' request for additional time to provide the expert disclosure in which it asserted a design defect, but opposes Gluth's request for additional time to assert a nonparty affirmative defense based on MW Builders' expert disclosure asserting a design defect. It seems somewhat illogical for Eastgate to assert that Gluth should have discovered sooner a claim that MW Builders was unprepared to make until its expert witness disclosures were served on May 26, 2022.

In the end, it is undisputed that Gluth did not learn that MW Builders' expert would place the blame for Gluth's allegedly defective work under the subcontract on the design of the roof until May 26, 2022, when MW Builders served Gluth with its expert report. Upon learning this information, Gluth promptly moved to file its Proposed Amended Answer to name the architect, Pollack, as a nonparty to whom fault is attributable. Given the history of this litigation, the Court does not find that Gluth lacked diligence in failing to assert an affirmative defense based on a design defect attributable to a nonparty prior to learning from MW Builders' expert that MW Builders intended to claim a design defect as a cause of the defective work completed by Gluth. *See Tschantz*, 160 F.R.D. at 571 ("[I]n order to demonstrate 'good cause' a party must show that despite their diligence the time-table could not have reasonably been met." (citing 6A Wright, Miller and Kane, FEDERAL PRACTICE AND PROCEDURE § 1522.1 at 231 (2nd ed. 1990) ("Good cause" means scheduling deadlines cannot be met despite party's diligence.))). Particularly in light of the strong policy in this circuit favoring deciding matters on the merits rather than by default, *see Sun v. Bd. of Trs. of the Univ. of Ill.*, 473 F.3d 799, 811 (7th Cir. 2007), the Court concludes that Gluth has shown good cause for modifying the applicable Scheduling Order deadline.

    **B.**    **RULE 15(a)(2) STANDARD**

Because the Court finds that Gluth has met the good-cause standard of Rule 16(b)(4), the Court turns next to whether the requirements of Rule 15(a)(2) are satisfied. "[T]he decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) (internal quotation marks and citation omitted). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Liu v. T&H Mach. Inc.,* 191 F.3d 790, 794 (7th Cir. 1999). "[T]his mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper

13

subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation omitted). Despite this liberal policy, however, "district courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) (citing *Foman*).

Eastgate has not argued that there has been bad faith, dilatory motive, repeated failure to cure deficiencies, or undue prejudice to it. Nor has it argued that the Proposed Amended Answer would be futile. Eastgate's only argument—lack of diligence—suggests undue delay as a basis for denying Gluth's motion. But the Court has rejected Eastgate's lack of diligence argument. Consequently, for the reasons previously discussed, the Court also does not find undue delay, and concludes that leave to amend should be freely given in this instance.

### C. "REASONABLE PROMPTNESS" STANDARD OF IND. CODE § 34-15-16

Finally, although neither party discusses the Indiana Comparative Fault Act ("Act"), that statute provides that 'a defendant may assert as a defense that the damages of the claimant were caused in full or in part by a nonparty.'" *Cota v. Pilkington N. Am., Inc.*, No. 1:12-CV-365, 2013 WL 1703571, at *2 (N.D. Ind. Apr. 19, 2013) (quoting Ind. Code. § 34–51–2–14). "This defense is referred to in [the Act] as a nonparty defense." Ind. Code § 34-51-2-14; *see Benbenek v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, No. 1:12-cv-0591-JMS-DML, 2012 WL 5331230, at * 2 (S.D. Ind. Oct. 29, 2012) ("'Nonparty' is a term of art under the statute, and is a person a defendant identifies in an affirmative defense of [its] answer as one who—though not named by the plaintiff—caused the plaintiff's damages in full or in part."). The rationale for the nonparty defense rule is that, "[j]ust as it may be considered 'unfair' to deprive the plaintiff of recovering the full amount of ...

14

damages due to the allocation of fault to a nonparty, it would be 'unfair' to require the defendant alone to bear the cost ... if he or she was not solely responsible." *Bulldog Battery Corp. v. Pica Invs., Inc*., 736 N.E.2d 333, 338 (Ind. Ct. App. 2000). "Under the Act, "[t]he defendant bears the burden of pleading and proving the specific name of the nonparty. As such, 'a defendant who intends to use a nonparty defense must specifically name the nonparty.'" *Cota*, 2013 WL 1703571, at *2 (quoting *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, 913 (Ind. 2001) (citing *Cornell Harbison Excavating, Inc. v. May*, 546 N.E.2d 1186, 1187 (Ind. 1989))); *see* Ind. Code § 34–51–2–15 ("The burden of proof of a nonparty defense is upon the defendant, who must affirmatively plead the defense."). Further, a party must disclose the identity of nonparty defendants within a certain timeframe. *Id.* Specifically, "[a] nonparty defense that is known by the defendant when the defendant files the defendant's first answer shall be pleaded as a part of the first answer." Ind. Code Ann. § 34-51-2-16.; *see Parker v. Rockies Exp. Pipeline LLC*, No. 1:11-CV-00139-SEB, 2012 WL 4481976, at *1 (S.D. Ind. Sept. 28, 2012) ("The defendant must raise any nonparty defense in his answer, assuming that such defense is known prior to the time of filing." (citing Ind. Code § 34–51–2–16 and *Kelly v. Bennett*, 792 N.E.2d 584, 586 (Ind. Ct. App. 2003)). "A defendant who gains actual knowledge of a nonparty defense *after* the filing of an answer may plead the defense with reasonable promptness." Ind. Code § 34–51–2–16 (emphasis added).

      The "reasonable promptness" standard in the Act has been held to "refer[ ] to the period of time between service of the complaint on the defendant and assertion of the nonparty defense by the same," *not* "the time between learning of the defense and asserting it." *Parker*, 2012 WL 4481976, at *2 (emphasis added) (citing *Custer v. Schumacher Racing Corp*., No. 1:06–cv–1208–WTL–JDT, 2007 WL 2902047, at *2 (S.D. Ind. Aug. 14, 2007) (citing *Kelly*, 792 N.E.2d at 587)).

The rationale for this interpretation is that "[t]he purpose of the requirement to plead a nonparty defense with 'reasonable promptness' would be 'confounded if a defendant takes little action to discover such a defense until a substantial delay has occurred.'" *Id.* (quoting *Kelly*, 792 N.E.2d at 587). "[I]f the defendant was served with a complaint and summons more than one hundred fifty (150) days before the expiration of the limitation of action applicable to the claimant's claim against the nonparty, the defendant *shall plead* any nonparty defense not later than forty-five (45) days before the expiration of that limitation of action." Ind. Code § 34–51–2–16 (emphasis added); *see Cota*, 2013 WL 1703571, at *2 (citing *Parker*, 2012 WL 4481976, at *2 (citing Ind. Code § 34–51–2–16)). "The trial court may alter these time limitations or make other suitable time limitations" so long as the altered time limitations (1) "giv[e] the defendant a reasonable opportunity to discover the existence of a nonparty defense"; and (2) "giv[e] the claimant a reasonable opportunity to add the nonparty as an additional defendant to the action before the expiration of the period of limitation applicable to the claim." Ind. Code Ann. § 34-51-2-16; *see Parker*, 2012 WL 4481976, at *2.

Indiana courts have treated the deadlines in the Act for naming responsible nonparties as if those deadlines are applicable in federal court. *See Cota,* 2013 WL 1703571, at *2 (stating that "[a] defendant's right to amend its answer to assert a nonparty defense is governed by the Indiana Comparative Fault Act, Ind. Code. § 34–51–2"); *Atkins v. Kroger Co*, No. 1:11-cv-772-JMS-MJD, 2013 WL 1319395, at *1 and n.1 (S.D. Ind. Mar. 28, 2013) (holding that both Rule 15 and the requirements of the Act must be met for a defendant to amend its answer to assert a nonparty defense); *Benbenek,* 2012 WL 5331230, at *2 n.2 (declining to reach and resolve the defendants' contention that the time parameters in the Act for raising a nonparty defense are not binding in federal court under *Erie* principles "because even if the court ignored the [Act] provisions and

16

relied only on the amendment principles under Fed. R. Civ. P. 15 and 16, its decision would be the same," but noting "that strong arguments could be made that the timing rules under the [Act] are integral to the Act, are substantive and not merely procedural, and are therefore governing in federal court"). Moreover, district courts in Indiana have held that "if a defendant 'cannot meet the requirements of the Indiana Comparative Fault Act, it cannot properly assert a nonparty defense and the amendment would be futile.' Put another way, a court can deny a motion to amend to add a nonparty defense on the grounds of futility if the requirements of the Comparative Fault Act are not met." *Cota*, 2013 WL 1703571, at *2 (quoting *Atkins*, 2013 WL 1319395, at *1 (citing *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001))); *see also Jones v. Kaplan Trucking Co.*, No. 4:17-cv-22, 2019 WL 5446364, at *2 (N.D. Ind. Oct. 24, 2019) (same); *Caterpillar Logistics Servs., Inc. v. Moore Sec., L.L.C.*, No. 4:08–cv–213–RLY–WGH, 2009 WL 4677039, at *2 (S.D. Ind. Dec. 9, 2009) (denying a motion to add a nonparty affirmative defense as futile when the defendant did not name the party).

Eastgate has not argued, and it seems unlikely that it could argue, that Gluth was served with the Second Amended Third-Party Complaint more than one hundred fifty (150) days before the expiration of the limitation of action applicable to any claim Eastgate could make against Pollack. A definitive answer to when Eastgate's claims against Pollack accrued is not possible at this juncture in the proceedings. Nevertheless, from the facts known thus far, it would appear that the statute of repose may have already expired as of the date on which Gluth was served with the Second Amended Third-Party Complaint, which would mean that Gluth's motion to amend naming Pollack in a nonparty defense to MW Builders' claims was *not* filed more than 150 day prior to the expiration of the limitations period applicable to Eastgate's claims against Pollack. *See Benbenek*, 2012 WL 5331230, at *4 (where the plaintiff did "not dispute … that the statute of

17

limitations on a claim by him against [the nonparty] had run *before* the defendants were required to file their first answers to the complaint" (emphasis in original)). In other words, absent any argument by Eastgate to the contrary, the Court concludes that the 45-day rule in Ind. Code § 34-51-2-16 for when the defendant asserting a nonparty defense "shall plead" that defense likely would not apply here. "Accordingly, pursuant to Indiana Code § 34-51-2-16, [Gluth] is not bound by an inflexible deadline so long as it … plead[ed] all nonparty defenses with reasonable promptness." *Parker*, 2012 WL 4481976, at *3.[5]

"The statute contemplates that a defendant should have 'a reasonable opportunity to discover the existence of a nonparty defense.'" *Benbenek*, 2012 WL 5331230, at *4 (quoting Ind. Code § 34-51-2-16(1)). "The chronology of this lawsuit," discussed above, "gives the Court no reason to conclude that [Gluth] has neglected its due diligence responsibilities or otherwise failed to act with the 'reasonable promptness' contemplated by statute." *Parker*, 2012 WL 4481976, at *2. Gluth acted promptly after learning of the alleged design defect from MW Builders' expert report. A design defect was not so obvious that Gluth necessarily should have investigated the possibility sooner.[6] Although Gluth filed the motion to amend approximately 14 months after it filed its original answer, discovery already had been extended by the parties' agreement for various other reasons, with the then applicable cut-off being September 12, 2022, approximately three months after Gluth's motion to amend was filed.[7] Moreover, it appears that the timing of Gluth's

---

[5] "[T]he language of the statute is arguably ambiguous" as to whether the Court can alter the 45-day time limit when certain standards are met. *Kline v. Gemini Trans., LLC*, No. 1:17-cv-353-TWP-DML, 2017 WL 784691, at *2 (S.D. Ind. Mar. 1, 2017).

[6] *Compare Kline*, 2017 WL 784691, at *3 (where it was "obvious from the outset that other vehicles were involved in the crash at issue").

[7] *Compare Jones,* 2019 WL 5446364, at *3 (where the defendants were served with the complaint approximately 30 months before filing the motion to amend, the plaintiff's deposition occurred more than a year before the filing of the motion, and the police reports concerning the crash at

18

amendment will not have any negative effect on Eastgate's ability to bring a claim against Pollack as Eastgate fails to argue that claim would not have been time-barred before Gluth's original answer was due. "Finally, [Eastgate] remains free to advance arguments against attribution of fault to [Pollack]." *Benbenek*, 2012 WL 5331230, at *4. For all of these reasons, even if Eastgate had raised the deadlines in the Indiana Comparative Fault Act as a basis for denying Gluth's motion to amend, the Court likely would not have found that argument compelling.

## CONCLUSION

For the foregoing reasons, Gluth's Verified Motion To File An Amended Answer **[DE 137]**, is **GRANTED**. Gluth is **DIRECTED** to file its Amended Answer on or before **January 12, 2023**.

So ORDERED this 10th day of January, 2023.

s/ Joshua P. Kolar<br>
MAGISTRATE JUDGE JOSHUA P. KOLAR<br>
UNITED STATES DISTRICT COURT

---

issue identified the nonparties the defendants' motion sought to add); *Kline*, 2017 WL 784691, at *4 (where motion to amend was filed less than five months after original answer was filed, court states that "[t]hough it is … still early in this case, it is not early for limitations period," which was due to expire eleven days after the proposed amendment, an insufficient amount of time for the plaintiff to investigate whether it had a good faith basis for suing the nonparty); *Atkins,* 2013 WL 1319395, at *2 ("This case has been pending for nearly two years and discovery is closed.").